IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

GALA L. KELLY,                          )
                                        )
      Plaintiff,                       )
                                        )
                v.          )   Case No. CIV-12-343-SPS
                                        )
CAROLYN W. COLVIN,                      )
Acting Commissioner of the Social       )
Security Administration,[1]             )
                                        )
      Defendant.                       )

# OPINION AND ORDER

The claimant Gala L. Kelly requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the decision of the Commissioner and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is reversed and the case remanded for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born August 24, 1976, and was thirty-four years old at the time of the most recent administrative hearing (Tr. 68, 370). She completed the seventh grade, and has worked as a fast food cashier and detail cashier/stocker (Tr. 314, 361). The claimant alleges inability to work since June 25, 2002, due to mental problems including mood swing, depression and panic attacks, as well as being sick a lot and having "female problems." (Tr. 76-77).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on March 13, 2003. Her applications were denied. ALJ Michael Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 27, 2005 (Tr. 20-29). The Appeals Council denied review, but on appeal this Court reversed the decision of the Commissioner in Case No. CIV-05-235-FHS-SPS and remanded the case for further proceedings on August 3, 2007 (Tr. 432-442). The Appeal Council did not remand the case to the ALJ until December 30, 2010, when a second administrative hearing was held and the ALJ again determined that the claimant was not disabled in a written opinion dated April 1, 2011 (Tr. 351-363). The Appeals Council again denied review, so the ALJ's April 1, 2011 decision represents the Commissioner's final decision

for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481. The claimant later filed an additional claim for Title XVI benefits on April 18, 2005, and was ultimately found to be disabled beginning April 1, 2005.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but could understand, remember, concentrate, persist, and attend to tasks well enough only to perform simple, unskilled tasks and detailed, semi-skilled tasks for an eight-hour workday, with normal breaks, complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and maintain attention and concentration for extended periods. The ALJ found that the claimant could not understand, remember, concentrate, persist, or attend to tasks well enough to perform complex, skilled tasks for a normal workday or normal workweek, or interact with the general public (Tr. 356). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled from June 25, 2002 through March 31, 2005, because there was other work she could perform in the regional and national economies, *i. e.*, housekeeping/cleaner, merchandise marker, and shirt presser (Tr. 362).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly consider her obesity, (ii) by failing to perform a proper RFC assessment, and (iii) by failing to perform

-4-

a proper credibility analysis. The Court finds that the ALJ failed to properly evaluate the claimant's mental limitations in assessing her RFC at step four, and the Commissioner's decision of the Commissioner should therefore be reversed.

Consultative examiner Eric Broadway, M.D., evaluated the claimant for disability determination on June 2, 2003. He took the claimant's history and, noting her judgment was poor, opined that she might be under the influence of medications. He further added that he did not believe she was capable of managing her own finances, because "[s]he is too psychotic." (Tr. 135). Dr. Broadway diagnosed the claimant with schizophrenia, paranoid type, continuous; depressive disorder, NOS; anxiety disorder, NOS, and noted her Global Assessment of Functioning (GAF) score of 30, with a 50 being her highest in the past year (Tr. 135). The claimant began treatment at A Place for Change, and was evaluated on January 2, 2004 by Karen Plants, a licensed professional counselor. She diagnosed the claimant with dissociative disorder, NOS; and major depressive disorder, recurrent, moderate, with a GAF of 45 (Tr. 217). At the end of January, the claimant reported partial improvement because her medication made her feel "a little better," but was still not sleeping well (Tr. 234). At the end of March, the claimant reported she was still hearing voices and experiencing paranoia (Tr. 240). On April 1, 2004, she was again assessed for a mental health services plan, and diagnosed with dissociative disorder as well as major depressive disorder, recurrent, moderate, and a GAF of 48 (Tr. 270). By June 2004, progress notes reflect that the claimant had missed several appointments, had been living in an allegedly condemned house, and was suffering from social anxiety and dissociative episodes (Tr. 257, 258-264).

The claimant was voluntarily admitted to Carl Albert Community Mental Health Center for suicidal ideation on August 4, 2004 (Tr. 243). She was diagnosed with major depressive disorder, severe, with psychotic features, as well as cannabis abuse and borderline personality disorder, and assessed with a GAF of 35. Upon discharge, she was diagnosed with major depressive disorder, severe, without psychotic features, as well as borderline personality disorder and a GAF of 50 (Tr. 244-251). On August 24, 2004, she reported that she was still depressed but no longer suicidal, although she continued to report auditory hallucinations and feelings that people were out to get her (Tr. 281). In January 2005, she reported being happy, although she reported she sometimes still hears things (Tr. 485-486). On April 13, 2005, the claimant went to the emergency room complaining of a panic attack, anxiety, and reporting that someone had stolen her purse with her medicine in it (Tr. 506).

The claimant testified at the administrative hearing that she was receiving mental health treatment and medication for her mental impairments (Tr. 317). She indicated she was diagnosed with manic depression, including auditory hallucinations (Tr. 320, 324-325), and that although her medication was helping, she was still having hallucinations (Tr. 319-320). The claimant testified that she had difficulty concentrating to the point that her daughter had to help her start a load of laundry and cook dinner (Tr. 320-321). She indicated her grandmother took her children to school and did her grocery shopping for her (Tr. 322-324). The claimant testified her brother had driven her to the hearing because she felt groggy from her medications, which caused drowsiness, dizziness, and headaches (Tr. 331-332).

In his written opinion, the ALJ mentioned the consultative examination performed by Dr. Broadway but failed to evaluate his medical opinions as to the claimant's mental limitations or specify the weight he was assigning to those opinions. *See, e. g., Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."), *citing Goatcher v. U.S. Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The ALJ cited with approval Dr. Broadway's diagnosis of schizophrenia, but apparently ignored Dr. Broadway's opinions that the claimant could not manage her finances because she was "too psychotic" and that her medicine added to her "severe problem with depression, including suicidal thoughts, hallucinations, and anxiety" (Tr. 135). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). In addition to evaluating Dr. Broadway's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of Dr. Broadway's findings persuasive but not others. *See*

*Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

The ALJ also engaged in improper picking and choosing among the various GAF scores assigned to the claimant. In his written opinion, the ALJ expounded at length on the use of GAF scores and concluded that they had limited probative value because they were not dispositive as to disability (Tr. 356-357). He did not, however, analyze or even mention any of the claimant's GAF scores other than those higher than 50. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . does suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004), *citing Oslin*, 69 Fed. Appx. at 947. Instead of simply rejecting the claimant's sub-50 GAF scores as "not dispositive," the ALJ should have determined whether such low GAF scores were due to occupational factors. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job [but] assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related

factors."). *See also Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence.").[3]

Because the ALJ failed to analyze probative evidence potentially inconsistent with his RFC determination, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's mental RFC. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

---

[3] The Commissioner notes that the ALJ's treatment of the claimant's GAF scores was raised in Case No. CIV-05-235-FHS-SPS and contends that the claimant should be precluded from raising the issue in this case because the Court did not reverse on that basis in Case No. CIV-05-235-FHS-SPS. The Court disagrees for two reasons. First, the Court's decision in Case No. CIV-05-235-FHS-SPS was not intended to be dispositive of any issue not specifically addressed by the Court. Second, it is clear that the ALJ did not, as the Commissioner suggests, simply rectify on remand the error requiring reversal in Case No. CIV-05-235-FHS-SPS; on the contrary, it is clear from the ALJ's written opinion in this case that on remand the ALJ considered the evidence presented by the claimant *de novo*. Under these circumstances, it cannot be said that the ALJ's treatment of the claimant's GAF scores was fully litigated in Case No. CIV-05-235-FHS-SPS, and the claimant should therefore not be precluded from raising the issue herein.

**Conclusion**

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma